IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA )
and the STATE OF COLORADO, )
                         )
        Plaintiffs,      )
                         )     Civil Action No. 08-cv-02741-MSK-KMT
        v.               )
                         )
STANDARD METALS          )
CORPORATION, INC.        )
                         )
        Defendant.       )
_____ )

## CONSENT DECREE

## I. BACKGROUND

A.      The United States of America ("United States"), on behalf of the

Administrator of the United States Environmental Protection Agency ("EPA"), the Chief

of the United States Department of Agriculture Forest Service ("Forest Service"), the

Secretary of the Interior ("Interior"), and the State of Colorado ("State"), on behalf of the

Executive Director of the Colorado Department of Public Health and Environment, the

Director of the Colorado Department of Natural Resources, and the Attorney General of

the State of Colorado, filed a complaint in this matter pursuant to Section 107 of the

Comprehensive Environmental Response, Compensation, and Liability Act of 1980

("CERCLA"), 42 U.S.C. § 9607, seeking reimbursement of response costs incurred or to

be incurred for response actions taken or to be taken at or in connection with the release

or threatened release of hazardous substances at the Standard Mine Site in Gunnison

County, Colorado ("the Standard Mine Site"), the Ross Adams Site on Prince of Wales

Island, Alaska, six sites in San Juan County, Colorado ("the Silverton Sites"), and the

Antler Mine and Mill Site in Mohave County, Arizona ("The Antler Site") (collectively, the "Sites"), and to recover damages for injury to, destruction of, or loss of natural resources at the Sites and surrounding riparian corridors, including the reasonable costs of assessing such injury, destruction or loss.

B.    The Standard Mine Site is located approximately thirty (30) miles northwest of Gunnison and ten (10) miles west of Crested Butte in Gunnison County, Colorado, in the Ruby Range of the Gunnison National Forest, and encompasses approximately ten (10) acres of land that have been disturbed by past mining activities. The Standard Mine Site includes adits and shafts that access approximately 8,400 feet of open mine workings on six operating levels, waste rock and tailings piles, concrete footings and stem walls, a tailings pond, and various mine-related structures. Standard Metals holds title to six privately owned patented mining claims located within the Standard Mine Site. Also included within the Standard Mine Site are federal lands under the administration of the Forest Service. Injuries to aquatic and terrestrial natural resources have been identified at the Standard Mine Site and in the Elk Creek and Coal Creek corridors. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Standard Mine Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 14, 2005.

C.    The Ross Adams Site is an abandoned uranium mine located approximately 38 miles southwest of Ketchikan, Alaska, in the Tongass National Forest. Standard Metals was involved in operating the mine from 1972 until 1984. The Ross Adams Site includes undergound mine workings, waste rock piles, and contaminated soils, all of which are sources of hazardous substance releases.

D.     The Silverton Sites consist of the American Tunnel, the Mayflower Mill, the Mogul Mine, the Grand Mogul Mine, the Arrastra Gulch Dump, and the Sunnyside Mine, all mining-related sites in the Animas River and Cement Creek watersheds near Silverton, Colorado. The American Tunnel consists of an adit that accesses a vast complex of underground mine workings and an associated waste rock pile. The American Tunnel covers approximately two acres and is located primarily on public land under the administration of Interior. The Mayflower Mill consists of structures and tailings piles covering approximately 132 acres of mixed private land and public land under the administration of Interior. The Mogul Mine and Grand Mogul Mine consist of several adits and waste rock piles on a mixture of patented mining claims formerly leased by Standard Metals and public land under the administration of Interior. The Arrastra Gulch dump site consists of public land under the administration of Interior which was used for the unauthorized disposal of mining-related materials and substances. The Sunnyside Mine is located in the Animas River watershed northeast of Silverton, Colorado in San Juan County, Colorado. Injuries to aquatic and terrestrial natural resources have been identified at the Silverton Sites and in the Cement Creek and Animas River corridors.

E.     The Antler Site covers approximately 21 acres of mixed patented mining claims formerly owned by Standard Metals and public land under the administration of Interior. The Antler Site consists of adits, structures, and waste and tailings piles. Injuries to terrestrial natural resources have been identified at the Antler Site.

F. Standard Metals was incorporated in the State of Delaware in 1954 under the name Standard Uranium Corporation, and changed its name to Standard Metals Corporation in 1960.

G. In performing response actions at the Sites, Plaintiffs have incurred response costs and will continue to incur response costs in the future.

H. The State and Interior conducted a preliminary assessment of natural resource damages resulting from hazardous substance releases at the Standard Mine and Silverton Sites identifying extensive injuries to aquatic and terrestrial resources.

I. EPA, the Forest Service, Interior, and the State allege that Standard Metals is a responsible party pursuant to Section 107(a) of CERCLA, 42 U.S.C. §9607(a) and is jointly and severally liable for response costs incurred and to be incurred, and for natural resource damages at the Sites.

J. Plaintiffs have reviewed the Financial Information submitted by Standard Metals to determine whether Standard Metals is financially able to pay response costs incurred and to be incurred, and for natural resource damages at the Sites. Based upon this Financial Information, Plaintiffs have determined that Standard Metals has limited financial ability to pay for response costs incurred and to be incurred, and for natural resource damages at the Sites.

K. Standard Metals does not admit any liability to Plaintiffs arising out of the transactions or occurrences alleged in the complaint.

L. Plaintiffs and Standard Metals agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation

between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

THEREFORE, with the consent of the Parties to this Consent Decree, it is ORDERED, ADJUDGED, AND DECREED:

## II. <u>JURISDICTION</u>

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345 and 42 U.S.C. §§ 9607 and 9613(b) and also has personal jurisdiction over Standard Metals. Standard Metals consents to and shall not challenge entry of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. <u>PARTIES BOUND</u>

2.      This Consent Decree is binding upon the United States, the State, and upon Standard Metals and its successors and assigns. Any change in ownership or corporate or other legal status, including, but not limited to, any transfer of assets or real or personal property, shall in no way alter the status or responsibilities of Standard Metals under this Consent Decree.

## IV. <u>DEFINITIONS</u>

3.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations. Whenever terms listed below are used in this Consent Decree or in any appendix attached hereto, the following definitions shall apply:

a. "Antler Site" shall mean the site owned and operated by Standard Metals located east of Yucca, Arizona in Mohave County, Arizona.

b. "CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9601, *et seq.*

c. "Consent Decree" shall mean this Consent Decree and all appendices attached hereto. In the event of conflict between this Consent Decree and any appendix, the Consent Decree shall control.

d. "Date of Entry" shall mean the date the Court signs this Consent Decree.

e. "Day" shall mean a calendar day. In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

f. "DOJ" shall mean the United States Department of Justice and any successor departments, agencies or instrumentalities of the United States.

g. "EPA" shall mean the United States Environmental Protection Agency and any successor departments, agencies or instrumentalities of the United States.

h. "EPA Hazardous Substance Superfund" shall mean the Hazardous Substance Superfund established by the Internal Revenue Code, 26 U.S.C. § 9507.

i. "Financial Information" shall mean the financial information submitted by Standard Metals to EPA on or about July 13, 2007.

j.     "Forest Service" shall mean the United States Department of Agriculture Forest Service and any successor departments, agencies or instrumentalities of the United States.

k.     "Insurance Policies" shall mean all liability insurance policies issued to or for the benefit of Standard Metals Corporation or any predecessor in interest to Standard Metals Corporation, including all policies for which Standard Metals Corporation or its predecessor is an "insured," "named insured," or "additional insured," and including all policies for excess, pollution legal liability, and environmental impairment liability.

l.     "Interest" shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

m.     "Interior" shall mean the United States Department of the Interior and any successor departments, agencies or instrumentalities of the United States.

n.     "Paragraph" shall mean a portion of this Consent Decree identified by an Arabic numeral or an upper or lower case letter.

o.     "Parties" shall mean the United States, the State of Colorado, and Standard Metals Corporation.

p.     "Plaintiffs" shall mean the United States and the State of Colorado.

q.     "Response Costs" shall mean all costs of response, including but not limited to direct and indirect costs that the United States or the State has incurred or

will incur at or in connection with the Sites through the Date of Entry of this Consent Decree.

r.     "Ross Adams Site" shall mean the abandoned uranium mine and associated mine workings, haul road, and staging areas located approximately 38 miles southwest of Ketchikan, Alaska, on Prince of Wales Island in the Tongass National Forest.

s.     "Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

t.     "Silverton Sites" shall mean the following six sites:

1. the American Tunnel Site, located near Cement Creek in the Animas River watershed north of Silverton, Colorado in San Juan County, Colorado;

2. the Arrastra Gulch Disposal Site, located on Arrastra Creek in the Animas River watershed northeast of Silverton, Colorado in San Juan County, Colorado;

3. the Grand Mogul Mine Site, located near Cement Creek in the Animas River watershed north of Silverton, Colorado in San Juan County, Colorado;

4. the Mayflower Mill and Tailings Site, located in the Animas River watershed northeast of Silverton, Colorado in San Juan County, Colorado;

5. the Mogul Mine Site, located near Cement Creek in the Animas River watershed north of Silverton, Colorado in San Juan County, Colorado; and

6. the Sunnyside Mine Site, located in the Animas River watershed northeast of Silverton, Colorado in San Juan County, Colorado.

u.    "Sites" shall mean the Antler Site, the Ross Adams Site, the Silverton Sites, and the Standard Mine Site, collectively.

v.    "Standard Mine Site" shall mean the Standard Mine Superfund site, located approximately 30 miles northwest of Gunnison and 10 miles west of Crested Butte in Gunnison County, Colorado, in the Ruby Range of the Gunnison National Forest.

w.    "Standard Metals Corporation" or "Standard Metals" shall mean the corporation that was incorporated in Delaware in 1954 under the name Standard Uranium Corporation, and that changed its name to Standard Metals Corporation in 1960.

x.    "State" shall mean the State of Colorado, including its Department of Public Health and Environment, Department of Natural Resources and the Office of Attorney General.

y.    "United States" shall mean the United States of America, including its departments, agencies and instrumentalities.

## V. STATEMENT OF PURPOSE

4.    By entering into this Consent Decree, the mutual objective of the Parties is to avoid litigation by allowing Standard Metals to make cash payments from the proceeds

of insurance claims and to convey real property to address its alleged civil liability for the Sites as provided in the Covenant Not to Sue by Plaintiffs in Section IX, and subject to the Reservations of Rights by Plaintiffs in Section X.

## VI. CONFESSION AND SATISFACTION OF JUDGMENT

5.      Standard Metals hereby agrees and confesses to entry of a judgment against itself and in favor of the Plaintiffs in the amount of thirty million dollars ($30,000,000).  Although Plaintiffs may file this judgment as and where necessary to preserve secured creditor status in favor of Plaintiffs, Standard Metals acknowledges that such filing is not a condition precedent to Plaintiffs' secured creditor status.  This judgment shall remain in effect until Standard Metals has complied with all requirements in this Consent Decree.  Such judgment shall be satisfied solely through (i) recovery of insurance proceeds from any insurance policies held by Standard Metals, its predecessors in interest, or affiliates, and (ii) from the transfer of real property if requested in accordance with Paragraph 8.  Any cash payments made by Standard Metals pursuant to this Consent Decree shall, in the aggregate, not exceed the judgment amount.  Upon approval and entry, this Consent Decree shall constitute the final judgment for resolution of the United States' claims against Standard Metals, and no other form of judgment shall be required.

6.      Insurance Claims.  Standard Metals agrees to use "best efforts" to satisfy the foregoing judgment by obtaining any available indemnification or recovery from all applicable insurance policies held by Standard Metals, its predecessors in interest, or affiliates.  For the purposes of this subparagraph, "best efforts" includes cooperating with and assisting the United States in (i) asserting and pursuing claims for coverage under

those policies and (ii) negotiating or litigating to obtain the most favorable resolution of claims under those policies as is reasonable. Fifty percent (50%) of the first one hundred eighty thousand dollars ($180,000) of insurance proceeds from Standard Metals' insurance policies shall be paid to the United States and the remaining fifty percent (50%) shall be paid to Standard Metals. The United States shall be paid ninety percent (90%) of insurance proceeds from Standard Metals's insurance policies in excess of the first one hundred eighty thousand dollars ($180,000), and the remaining ten percent (10%) shall be paid to Standard Metals. Standard Metals shall use best efforts to have the insurance proceeds paid by its insurers directly to the United States, which will then distribute the proceeds to Standard Metals in the appropriate percentages set forth in this Paragraph within thirty (30) days of such proceeds becoming available. If it is not practicable for the insurers to pay the United States directly, then Standard Metals shall forward the United States' share to the United States within thirty (30) days of receiving such share, in accordance with the procedures specified below in Paragraph 7. Standard Metals has advised Plaintiffs that it may distribute its share of any insurance proceeds to other creditors of the company and the Plaintiffs agree not to interfere with such distribution.

7.    Payment instructions. Payments to the United States pursuant to Paragraph 6, whether by Standard Metals or the insurers, shall be made by FedWire Electronic Funds Transfer ("EFT" or wire transfer) to the U.S. Department of Justice account in accordance with current electronic funds transfer procedures provided by the Financial Litigation Unit of the United States Attorney's Office for the District of Colorado and shall reference the Civil Action Number Case No._____ and DOJ File Number 90-11-3-08831. The U.S. Department of Justice shall distribute to EPA, the

Forest Service, Interior, and the State, an allocated share of such proceeds in accordance with the Memorandum of Understanding among such agencies.

      8.    <u>Property Conveyance</u>. In consideration of the covenants not to sue set forth in Paragraph 14, Standard Metals agrees to transfer by quit claim deed any real property to which it holds title within thirty days of receipt of a request from the United States to complete the transfer. The United States may request a transfer of all such properties or some portion thereof. The United States must make all such requests within five (5) years of the Date of Entry of this Consent Decree ("Option Period"). All closing costs associated with any such transfers shall be the responsibility of the United States. Nothing herein shall be construed to obligate Standard Metals to continue to pay real estate taxes on such real property during the Option Period. Standard Metals agrees to cooperate with the United States in clearing impediments to clean title, including but not limited to tax liens.

## VII. **FAILURE TO COMPLY WITH CONSENT DECREE**

      9.    <u>Interest on Late Payments and Stipulated Penalty</u>.

      a.    If any amounts due under Paragraph 6 are not paid by the required date, Interest shall accrue on the unpaid balance through the date of payment.

      b.    If any amounts due under Paragraph 6 are not paid by the required date, Standard Metals shall be in violation of this Consent Decree and shall pay, as a stipulated penalty, one hundred dollars ($100) per violation per day that such payment is late. If Standard Metals does not comply with the non-payment obligations set forth in the Consent Decree, including obligations relating to conveyance of real property, access and institutional controls, Standard Metals shall be in violation of this Consent Decree

and shall pay to EPA, as a stipulated penalty, $1000 per violation per day of such

noncompliance.

        c.     Stipulated penalties are due and payable within 30 days of the date

of the demand for payment of the penalties by Plaintiffs. All payments under this

Paragraph shall be identified as "stipulated penalties" and shall be made by certified or

cashier's check made payable to "EPA Hazardous Substance Superfund" or by wire

transfer. The check, or a letter accompanying each check, shall identify the name and

address of the party making payment, the Site name, the EPA Region and Site/Spill ID #

08JM, and shall be sent to:

| | |
|---|---|
| Regular mail: | US Environmental Protection Agency<br>Superfund Payments<br>Cincinnati Finance Center<br>PO Box 979076<br>St. Louis, MO 63197-9000 |
| Overnight Mail: | U.S. Bank<br>Government Lockbox 979076<br>US EPA Superfund Payments<br>1005 Convention Plaza<br>SL-MO-C2-GL<br>St. Louis, MO 63101<br>314-418-1028 |

Wire Transfers should be sent directly to the Federal Reserve Bank in New York City

with the following information:

        ABA: 021030004
        Account Number: 68010727
        SWIFT address: FRNYUS33

Standard Metals shall send notice that payment has been made in accordance with

Paragraph 29.

d.     Penalties shall accrue as provided in this Paragraph regardless of whether EPA has notified Standard Metals of the violation or made a demand for payment, but need only be paid upon demand.  All penalties shall begin to accrue on the day after payment or performance is due or the day a violation occurs, and shall continue to accrue through the date of payment or the final day of correction of the noncompliance or completion of the activity.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

10.     If Plaintiffs bring an action to enforce this Consent Decree, Standard Metals shall reimburse Plaintiffs for all costs of such action, including but not limited to costs of attorney time.

11.     Payments made under this Section shall be in addition to any other remedies or sanctions available to Plaintiffs by virtue of Standard Metals' failure to comply with the requirements of this Consent Decree.

12.     Notwithstanding any other provision of this Section, Plaintiffs may, in their unreviewable discretion, waive payment of any portion of the stipulated penalties that have accrued pursuant to this Consent Decree.  Payment of stipulated penalties shall not excuse Standard Metals from payment as required by Paragraph 6 or from performance of any other requirements of this Consent Decree.

## VIII.  CERTIFICATION

13.     Standard Metals hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it:

a.  has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, reports, or information relating to its potential liability regarding the Site

since notification of potential liability by EPA and that it has fully complied with any and all EPA requests for documents or information regarding the Site and Standard Metals' financial circumstances;

b. has submitted to EPA Financial Information that fairly, accurately, and materially sets forth its financial circumstances, and that those circumstances have not materially changed between the time the Financial Information was submitted to EPA and the time Standard Metals executed this Consent Decree; and

c. has fully disclosed the existence of any Insurance Policies, or evidence of such policies, that may cover claims relating to cleanup of the Sites, that it continues to hold all rights under the Insurance Policies, and that it has not settled compromised or assigned any insurance rights or the assigned claims proceeds prior to approval of this Consent Decree.

## IX. COVENANT NOT TO SUE BY PLAINTIFFS

14.     Except as specifically provided in Paragraph 15 (Reservation of Rights by Plaintiffs), Plaintiffs covenant not to sue or to take administrative action against Standard Metals for actions relating to the Sites (i) pursuant to Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), to recover Response Costs incurred at the Sites; (ii) pursuant to Section 106 of CERCLA, 42 U.S.C. § 9606; and (iii) pursuant to Section 107(a)(4)(c) of CERCLA, 42 U.S.C. § 9607(a)(4)(C), to recover damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss. With respect to both present and future liability, this covenant not to sue shall take effect upon receipt by Plaintiffs of all payments required under Paragraph 6 and, if requested under Paragraph 8, upon the conveyance of real property, whichever

date is later. These covenants not to sue are conditioned upon the satisfactory performance by Standard Metals of its obligations under this Consent Decree, including but not limited to, cooperation in addressing inquiries by insurers, and execution of all necessary agreements to allow the pursuit, and collection of insurance claims proceeds and the conveyance of real property. These covenants not to sue are also conditioned upon the veracity and completeness of the Financial Information provided to EPA by Standard Metals. If the Financial Information is subsequently determined by the Plaintiffs to be false or, in any material respect, inaccurate, the covenant not to sue shall be null and void. This covenant not to sue extends only to Standard Metals and does not extend to any other person.

## X. <u>RESERVATION OF RIGHTS BY PLAINTIFFS</u>

15. The Plaintiffs reserve, and this Consent Decree is without prejudice to, all rights against Standard Metals with respect to all matters not expressly included within the Covenant Not to Sue by Plaintiffs in Paragraph 14. Notwithstanding any other provision of this Consent Decree, the Plaintiffs reserve all rights against Standard Metals with respect to:

    a. liability for failure of Standard Metals to meet a requirement of this Consent Decree;

    b. criminal liability;

    c. liability arising from the past, present, or future disposal, release or threat of release of a hazardous substance, pollutant, or contaminant outside of the Sites; and

d. *in rem* enforcement of EPA's federal lien against Standard Metals' property comprising a portion of the Standard Mine Site perfected on or about February 21, 2006, by the recording of a Notice of Federal Lien with the Clerk and Recorder of Gunnison County, Colorado.

16.     Notwithstanding any other provision of this Consent Decree, Plaintiffs reserve, and this Consent Decree is without prejudice to, the right to reinstitute or reopen this action, or to commence a new action seeking relief other than as provided in this Consent Decree, if any of the certifications made by Standard Metals in Paragraph 13 are false or, in any material respect, inaccurate.

## XI. COVENANT NOT TO SUE BY STANDARD METALS

17.     Standard Metals covenants not to sue and agrees not to assert any claims or causes of action against the Plaintiffs, or their contractors or employees, with respect to the Sites, or this Consent Decree, including but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund relating to the Sites based on Sections 106(b)(2), 107, 111, 112, or 113 of CERCLA, 42 U.S.C. §§ 9606(b)(2), 9607, 9611, 9612, or 9613, or any other provision of law;

b. any claim arising out of response actions at or in connection with the Sites, including any claim under the United States Constitution, the Colorado Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law; or

c. any claim against the Plaintiffs pursuant to Sections 107 and 113 of CERCLA, 42 U.S.C. §§ 9607 and 9613, relating to the Sites.

Except as provided in Paragraph 19 (Waiver of Claims) and Paragraph 23

(Waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the

event the Plaintiffs bring a cause of action or issue an order pursuant to the reservations

set forth in Paragraph 15 (c) - (d), but only to the extent that Standard Metals' claims

arise from the same response action or response costs that the Plaintiffs are seeking

pursuant to the applicable reservation.

18.     Nothing in this Consent Decree shall be deemed to constitute approval or

preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. §

9611, or 40 C.F.R. 300.700(d).

19.     Standard Metals agrees not to assert any CERCLA claims or causes of

action that it may have for all matters relating to the Sites, including for contribution,

against any other person, except as requested by Plaintiffs as necessary to the pursuit of

insurance claims proceeds.  Furthermore, nothing herein shall be deemed to affect or

limit in any way any rights, claims, causes of action, or entitlements that Standard Metals

and the Plaintiffs have or may have to seek and obtain payment for the full amount of

Standard Metals' liability at the Sites and any claims related to any other site.

## XII. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

20.     Nothing in this Consent Decree shall be construed to create any rights in,

or grant any cause of action to, any person not a Party to this Consent Decree.  The

preceding sentence shall not be construed to waive or nullify any rights that any person

not a signatory to this Decree may have under applicable law.  Except as provided in

Paragraph 19, the Parties expressly reserve any and all rights (including, but not limited

to, any right to contribution), defenses, claims, demands, and causes of action which they

may have with respect to any matter, transaction, or occurrence relating in any way to the Sites against any person not a Party hereto.

21. The Parties agree, and by entering this Consent Decree this Court finds, that Standard Metals is entitled, as of the date of entry of this Consent Decree, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are: all response actions taken or to be taken and all Response Costs; and recovery for damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction or loss associated with the Sites. The "matters addressed" in this Consent Decree do not include those response costs, response actions, or damages as to which Plaintiffs have reserved their rights under this Consent Decree (except for claims for failure to comply with this Decree), in the event that Plaintiffs assert rights against Standard Metals coming within the scope of such reservations.

22. Standard Metals agrees that, with respect to any suit or claim for contribution brought against it for matters related to this Consent Decree, it will notify the United States and the State in writing within 10 days of service of the complaint or claim upon it. In addition, Standard Metals shall notify the United States and the State within 10 days of service or receipt of any Motion for Summary Judgment, and within 10 days of receipt of any order from a court setting a case for trial, for matters related to this Consent Decree.

23. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of response costs, recovery for

natural resource damages, or other relief relating to the Sites, Standard Metals shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenant Not to Sue by Plaintiffs set forth in Section IX.

## XIII. SITE ACCESS AND ENVIRONMENTAL COVENANTS

24. With respect to any real property included within any of the Sites or other property that is now owned or controlled by Standard Metals or subsequently acquired by Standard Metals, Standard Metals shall:

a. Provide the United States, the State, and their representatives and contractors access at all reasonable times to the Sites and to any other property owned or controlled by Standard Metals to which access is determined by the United States or the State to be required for the implementation of this Consent Decree, or for the purpose of conducting any response activity related to any of the Sites, including but not limited to:

1. Monitoring, investigation, removal, remedial or other activities;

2. Verifying any data or information submitted to the United States or the State;

3. Conducting investigations relating to contamination at or near any of the Sites;

4. Obtaining samples; and

5. Assessing the need for, planning, or implementing response actions at or near the any of the Sites.

b. Refraining from using such property in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the response actions already performed or instituted at the Sites, or the response actions or reclamation work to be performed or instituted in the future.

25. _Environmental Covenants_. With respect to any real property included within any of the Sites that is owned by Standard Metals, Standard Metals shall, at the request of the United States or the State, execute and record in the appropriate county land office an Environmental Covenant pursuant to C.R.S. § 25-15-317, et. seq., or other applicable state law, for all portions of such properties where an engineered feature or structure has been incorporated in conjunction with a response activity that requires monitoring, maintenance, or operation or that will not function as intended if it is disturbed, or where residual contamination remains at levels that have been determined to be safe for one or more specific uses, but not all uses, as determined by the United States or the State. Standard Metals shall execute and record such Environmental Covenants within thirty (30) days following any request to do so from the United States or the State.

26. Notwithstanding any provision of this Consent Decree, the United States and the State retain all of their access authorities and rights, including enforcement authorities related thereto, under CERCLA, RCRA, and any other applicable statutes or regulations.

## XIV. **RETENTION OF RECORDS**

27. Until five (5) years after entry of this Consent Decree, Standard Metals shall preserve and retain all records now in its possession or control, or which come into

its possession or control, that relate in any manner to the Insurance Policies or evidence of the Insurance Policies, or to response actions taken at the Sites, regardless of any corporate retention policy to the contrary.

28. After the conclusion of the five (5) year document retention period, Standard Metals shall notify the United States at least 90 days prior to the destruction of any such records, and, upon request by the United States or the State, Standard Metals shall deliver any such records to the requesting Party. Standard Metals may assert that certain records are privileged under the attorney-client privilege or any other privilege recognized by federal law. If Standard Metals asserts such a privilege, it shall provide Plaintiffs with the following: 1) the title of the record; 2) the date of the record; 3) the name and title of the author of the record; 4) the name and title of each addressee and recipient; 5) a description of the subject of the record; and 6) the privilege asserted. However, no records created or generated pursuant to the requirements of this or any other settlement with the United States or the State shall be withheld on the grounds that they are privileged.

## XV. NOTICES AND SUBMISSIONS

29. Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, the State, and Standard Metals, respectively.

As to the United States:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice (DJ # 90-11-3-08831)
P.O. Box 7611
Washington, D.C. 20044-7611

Andrea Madigan
Enforcement Attorney
US EPA Region 8
1595 Wynkoop Street
Denver, Colorado 80202

As to the State:

Jason King
Assistant Attorney General
Natural Resources and Environment Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203

As to Standard Metals:

Standard Metals Corporation
768 College Ave
Haverford, PA 19041

## XVI. RETENTION OF JURISDICTION

30.    This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree.

## XVII. INTEGRATION[/APPENDICES

31.    This Consent Decree and its appendices constitute the final, complete and exclusive consent decree and understanding between the Parties with respect to the settlement embodied in this Consent Decree. The Parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

## XVIII.  LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

32.     This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment.  The United States and the State reserve the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.  Standard Metals consents to the entry of this Consent Decree without further notice.

33.     If for any reason this Court should decline to approve this Consent Decree in the form presented, this Consent Decree is voidable at the sole discretion of any Party and the terms of the Consent Decree may not be used as evidence in any litigation between the Parties.

## XIX.  SIGNATORIES/SERVICE

34.     The undersigned representatives of the Parties each certify that he or she is authorized to enter into the terms and conditions of this Consent Decree and to execute and bind legally such Party to this document.

35.     Standard Metals hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree, unless the United States has notified Standard Metals in writing that it no longer supports entry of the Consent Decree.

36.     Standard Metals shall identify, on the attached signature page, the name and address of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Standard Metals hereby agrees to accept service in that manner and to waive the formal

service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to, service of a summons.

## XX. **FINAL JUDGMENT**

37.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute the final judgment between the Parties. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS 2nd DAY OF February, 2008 9.

*Marcia S. Krieger*

Judge, United States District Court

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of United States v. Standard Metals Corporation, relating to the Standard Mine Superfund Site, the Silverton Sites, the Antler Mine Site and the Ross Adams Site.

FOR THE UNITED STATES OF AMERICA

_(signature)_      12/1/08
RONALD J. TENPAS      DATE
Assistant Attorney General
Environment and Natural Resource Division

_(signature)_      11/6/08
MARCELLO MOLLO      DATE
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 514-2757
Fax: (202) 616-6583
Email: marcello.mollo@usdoj.gov

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY, REGION 8

_Sharon J Kercher_  11-03-08
Sharon Kercher                    DATE
Director, Technical Enforcement Program
Office of Enforcement, Compliance
 and Environmental Justice

Acting for  _Richard S. L_  11/03/08
Matthew Cohn                    DATE
Acting Director, Legal Enforcement Program
Office of Enforcement, Compliance
 and Environmental Justice

_Andrea Madigan_  10/27/08
Andrea Madigan                    DATE
Enforcement Attorney, Legal Enforcement Program
Office of Enforcement, Compliance
 and Environmental Justice

FOR THE STATE OF COLORADO

Date: __10/30/08__    By: _John W. Suthers_
                               John W. Suthers
                               Attorney General and State Natural Resource
                               Trustee

Date: _____    By: _____
                               James B. Martin
                               Executive Director Department of Public Health &
                               Environment and State Natural Resource Trustee

Date: _____    By: _____
                               Ronald W. Cattany
                               Division Director Colorado Division of
                               Reclamation, Mining and Safety and State Natural
                               Resource Trustee

FOR THE STATE OF COLORADO

Date: _____ By: _____
                              John W. Suthers
                              Attorney General and State Natural Resource
                              Trustee

Date: **Oct 30, 2008** By: _____
                              James B. Martin
                              Executive Director Department of Public Health &
                              Environment and State Natural Resource Trustee

Date: _____ By: _____
                              Ronald W. Cattany
                              Division Director Colorado Division of
                              Reclamation, Mining and Safety and State Natural
                              Resource Trustee

- 28 -

FOR THE STATE OF COLORADO

Date: _____ By: _____
                                John W. Suthers
                                Attorney General and State Natural Resource
                                Trustee


Date: _____ By: _____
                                James B. Martin
                                Executive Director Department of Public Health &
                                Environment and State Natural Resource Trustee

Date: *October 27, 2008* By: _____
                                Ronald W. Cattany
                                Division Director Colorado Division of
                                Reclamation, Mining and Safety and State Natural
                                Resource Trustee

- 28 -

FOR STANDARD METALS CORPORATION

Date: 10-20-08     By: _____
                       Winston G. Gresov
                       Vice President & CEO
                       Standard Metals Corporation

FOR THE UNITED STATES DEPARTMENT OF AGRICULTURE

Date: 11/17/08    By: _Jacquelin L. Tauts_
                       for
                       Rick Cables
                       Regional Forester for the Mountain Region
                       United States Forest Service


Date: 12-8-08     By: _Phil X Busato_
                       for
                       Dennis Bschor
                       Regional Forester for the Alaska Region
                       United States Forest Service